AO 91 (Rev. 11/11) Criminal Complaint     AUSA Aaron R. Bond (312) 353-5300

**FILED**
5/25/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: **21 CR 332** |
|---|---|
| v. | UNDER SEAL |
| JORGE A. VALDEZ; and RAFAEL ZARCO-PICAZO, a/k/a "El Toyota" | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about January 29, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant JORGE A. VALDEZ violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance |

### COUNT TWO

On or about January 30, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant RAFAEL ZARCO-PICAZO violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

　X　 Continued on the attached sheet.

_____
DANIEL NAGY, Special Agent, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing by telephone.

Date: May 25, 2021

_____
*Judge's signature*

City and state: Chicago, Illinois

SUSAN E. COX, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS  } Ss

## AFFIDAVIT

I, DANIEL NAGY, being duly sworn, state as follows:

1. I am a Special Agent with Homeland Security Investigations (HSI). I have been so employed since approximately February 2006. As part of my duties as a HSI Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

2. This affidavit is submitted in support of a criminal complaint alleging that RAFAEL ZARCO-PICAZO and JORGE A. VALDEZ have violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging VALDEZ with possession with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and ZARCO-PICAZO with possession with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a

Schedule II Controlled Substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offenses alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers (LEOs), my training and experience, and the training and experience of other law enforcement officers.

## FACTS SUPPORTING PROBABLE CAUSE

4. On or about January 29, 2021, at approximately 1:07 p.m., using a pole camera, law enforcement officers ("LEOs") observed a black 2000 Toyota pickup truck bearing Illinois license plate 2718368-B ("Subject Vehicle 8"),[1] driven by ZARCO-PICAZO,[2] exit the detached garage located at 2315 North Menard Avenue, Chicago, Illinois (the "Subject Premises")[3] located behind the single-family residence at 2315 North Menard Avenue, in Chicago, and depart the area. LEOs followed Subject Vehicle 8 to the Walgreen's located at 5140 West Diversey Avenue, in Chicago.

5. At approximately 1:15 p.m., LEOs observed ZARCO-PICAZO park Subject Vehicle 8 in the above-referenced Walgreen's parking lot. Moments later,

---

[1] On or about May 8, 2020, May 15, 2020, June 18, 2020, August 3, 2020, and January 14, 2021, Chief Judge Rebecca R. Pallmeyer signed warrants and orders authorizing the installation and monitoring of a tracking device on Subject Vehicle 8 for periods of 45 days.

[2] LEOs identified ZARCO-PICAZO based on his State of Illinois driver's license photograph.

[3] As described in greater detail below, on or about January 30, 2021, LEOs obtained a federal warrant to search the detached garage located at 2315 North Menard Avenue, Chicago, Illinois (21 M 48), for evidence, instrumentalities, fruits, and contraband related to narcotics offenses in violation of Title 21, United States Code, Sections 841 and 846.

LEOs observed ZARCO-PICAZO exit Subject Vehicle 8, walk over to a 2020 Chevrolet Silverado pickup truck, bearing Illinois license plate 2895638-B,[4] occupied by two males later determined to be JORGE A. VALDEZ and Individual B,[5] and enter the backseat of the vehicle. About a minute later, LEOs observed ZARCO-PICAZO exit the Chevy Silverado and reenter Subject Vehicle 8. Moments later, both vehicles departed the area followed by LEOs. Based upon surveillance detailed below, the subsequent seizure of suspect cocaine, my knowledge of the investigation, and my training and experience, I believe that ZARCO-PICAZO delivered a sample of cocaine to VALDEZ, which ZARCO-PICAZO had obtained from inside of the Subject Premises.

6. LEOs continued to follow Subject Vehicle 8. At approximately 1:20 p.m., LEOs observed Subject Vehicle 8 return to the alley behind the Subject Premises. Utilizing a pole camera, LEOs observed Subject Vehicle 8 park behind the Subject Premises. Moments later, LEOs watched the garage door of the Subject Premises open, at which time ZARCO-PICAZO exited Subject Vehicle 8 and entered the Subject Premises.

7. About a minute later, at approximately 1:21 p.m., utilizing a pole camera, LEOs observed ZARCO-PICAZO exit the Subject Premises, re-enter Subject

---

[4] According to Illinois Secretary of State records, the Chevy Silverado pickup truck is registered to Individual A at 5931 W. Patterson Avenue, Chicago, IL 60634.

[5] As described in greater detail below, later that same afternoon, LEOs encountered the Chevy Silverado in a different Walgreens parking lot and conducted field interviews with both occupants of the vehicle. During the field interviews LEOs confirmed the identifications of VALDEZ and Individual B based on their respective State of Illinois identification documents, which they produced during their interviews.

Vehicle 8, and depart the area. LEOs followed Subject Vehicle 8 to the Walgreen's located at 5600 West Fullerton Avenue in Chicago. Based upon surveillance detailed below, the subsequent seizure of suspect cocaine, my knowledge of the investigation, and my training and experience, I believe that ZARCO-PICAZO retrieved approximately one kilogram of cocaine from inside of the Subject Premises. At approximately 1:24 p.m., LEOs observed ZARCO-PICAZO park Subject Vehicle 8 in the above-referenced Walgreen's parking lot. Approximately ten minutes later, LEOs observed the same Chevy Silverado pickup truck, referenced above in paragraph 5, arrive at the Walgreen's parking lot and park next to Subject Vehicle 8. Moments later, LEOs observed ZARCO-PICAZO exit Subject Vehicle 8, walk over to the Chevy Silverado, occupied by VALDEZ and Individual B, and enter the backseat. Approximately a minute later, LEOs observed ZARCO-PICAZO exit the pickup truck and return to Subject Vehicle 8. Based upon surveillance detailed below, the subsequent seizure of suspect cocaine, my knowledge of the investigation, and my training and experience, I believe that ZARCO-PICAZO delivered approximately one kilogram of cocaine, which ZARCO-PICAZO had retrieved from inside of the Subject Premises, to VALDEZ.

8. Based upon their observations throughout the day of ZARCO-PICAZO, Subject Vehicle 8, and the occupants of the Chevy Silverado pickup truck, detailed above, as well as prior observations of ZARCO-PICAZO throughout the course of this investigation, LEOs believed that they had witnessed a narcotics transaction between ZARCO-PICAZO and the occupants of the Silverado. At approximately 1:35 p.m.,

LEOs approached Subject Vehicle 8 and the Silverado, which were still parked in the Walgreens parking lot.

9. Upon approaching the Silverado, LEOs spoke with VALDEZ, the driver, who stated that he did not have a valid driver's license. Additionally, LEOs observed, in plain view, open alcoholic beverages inside of the Silverado. The LEO asked VALDEZ, "What's going on?" VALDEZ stated, "The guy [ZARCO-PICAZO] just tried to offer me something." The LEO asked, "Who?" VALDEZ stated, "That guy…in the other car [Subject Vehicle 8]." The LEO asked, "What was he trying to offer you?" VALDEZ stated, "Cocaine." The LEO asked, "Where is it?" VALDEZ stated, "It's on the other side [the front passenger side]." LEOs then observed a rectangular-shaped item, wrapped in black tape, and covered in a layer of green cellophane, sticking out from beneath the front passenger seat of the Silverado. LEOs subsequently recovered this item from beneath the front passenger seat of the Silverado and found it to contain approximately one kilogram of a pressed white powdery substance, which later field-tested positive for cocaine.

10. The suspect cocaine was later submitted to the U.S. Customs and Border Protection Laboratory and tested positive for cocaine and weighed approximately 1,002.04 grams. Based on my training and experience, the quantity of narcotics recovered is not a user quantity of narcotics, but rather indicates that the individual in possession of the narcotics intended to distribute the narcotics.

11. Additionally, LEOs recovered a pressed white powdery substance, wrapped in green cellophane, inside the cup-holder attached to the center console of

the Silverado, which later field-tested positive for cocaine and weighed approximately two grams. Based on the statements detailed below, my knowledge of the investigation, and my training and experience, I believe that this was the cocaine sample that ZARCO-PICAZO had delivered to the occupants of the Chevy Silverado earlier in the day at the Walgreen's located at 5140 West Diversey Avenue, in Chicago.

12. VALDEZ and Individual B (the passenger of the Silverado) were taken into custody and transported to Chicago Police Department's Homan Square facility where VALDEZ was interviewed.[6] After being advised of his *Miranda* rights, VALDEZ stated that he had met ZARCO-PICAZO at the Walgreen's on Diversey Avenue earlier that afternoon to pick-up a "$50 bag" of cocaine. VALDEZ later clarified that the small amount of cocaine was actually a sample from a kilogram of cocaine that VALDEZ intended to purchase from ZARCO-PICAZO. VALDEZ stated that after they departed the Walgreen's parking lot on Diversey Avenue, he called ZARCO-PICAZO and arranged to pick up the kilogram from ZARCO-PICAZO at the second Walgreen's located on Fullerton Avenue. VALDEZ stated that he believed ZARCO-PICAZO was not in possession of the kilogram of cocaine at their initial meeting at the Walgreen's on Diversey Avenue. VALDEZ stated that ZARCO-PICAZO was "fronting" the kilogram of cocaine to VALDEZ for $39,000–$40,000. VALDEZ admitted to previously purchasing a kilogram of cocaine from ZARCO-

---

[6] Individual B was not interviewed because after interviewing VALDEZ, LEOs believed, based on VALDEZ's statements, that Individual B was not involved in the narcotics transaction.

PICAZO in about November of 2020 and selling the cocaine in smaller quantities to his narcotics customers for approximately $1,400-$1,500 per ounce.

13. At the same time LEOs approached the Silverado containing VALDEZ and Individual B, LEOs also approached ZARCO-PICAZO who was about to re-enter Subject Vehicle 8. As LEOs approached, ZARCO-PICAZO shut the driver's side door of Subject Vehicle 8 and attempted to walk away from his vehicle. A LEO asked ZARCO-PICAZO, "You were in this car [Silverado], too?" ZARCO-PICAZO replied, "No," and pointed to Subject Vehicle 8. ZARCO-PICAZO was taken into custody and transported to Chicago Police Department's Homan Square facility. After being advised of his *Miranda* rights, ZARCO-PICAZO denied having any knowledge of the cocaine or the Subject Premises.

14. On or about January 30, 2021, LEOs obtained a federal warrant to search the Subject Premises (21 M 48) for evidence, instrumentalities, fruits, and contraband related to narcotics offenses in violation of Title 21, United States Code, Sections 841 and 846.

15. On or about January 30, 2021, at approximately 1:31 a.m., LEOs executed the search warrant. No one was encountered inside the Subject Premises at the time entry was made, but a Nissan Z, bearing Illinois license plate BM 68287, registered to RAFAEL ZARCO-PICAZO at 2100 N. Lorel Avenue, FL 2, Chicago, IL 60639, was parked inside the Subject Premises. After entry, LEOs began a systematic search of the Subject Premises.

16. From inside the Nissan Z, LEOs recovered a roll of green cellophane stretch wrap and 14 bricks of a pressed white powdery substance, which later field-tested positive for cocaine, hidden inside the void behind the 2nd row speaker console. Six of the bricks of suspect cocaine were later submitted to the U.S. Customs and Border Protection Laboratory and tested positive for cocaine and weighed approximately 6.04 kilograms. The remaining eight bricks of suspect cocaine were later submitted to the Illinois State Police Forensic Laboratory and tested positive for cocaine and weighed approximately 8.08 kilograms. In total, LEOs seized approximately 14.12 kilograms of cocaine from the Subject Premises.

17. Based on my training and experience, the quantity of narcotics recovered is not a user quantity of narcotics, but rather indicates that the individual in possession of the narcotics intended to distribute the narcotics.

18. Following the interviews and the execution of the search warrant, ZARCO-PICAZO, VALDEZ, and Individual B were released from police custody pending further investigation.

## CONCLUSION

19. Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about January 29, 2021, JORGE A. VALDEZ knowingly and intentionally possessed with intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and on or about January 30, 2021, RAFAEL ZARCO-PICAZO knowingly and intentionally

possessed with intent to distribute 5 kilograms or more of a substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_____
DANIEL NAGY
Special Agent, Homeland Security Investigations

Pursuant to Fed. R. Crim. P. 4.1, this Affidavit is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Affidavit by telephone this 25th day of May, 2021

_____
SUSAN E. COX
United States Magistrate Judge

9